UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MANHATTAN AVENUE LLC,

     Plaintiff,

v.                               CASE NO. 8:22-cv-2925-SDM-CPT

THE CITY OF TAMPA and
THE DEPARTMENT OF WASTE
MANAGEMENT,

     Defendants.

_____/

**<u>ORDER</u>**

     In February 2022, Manhattan Avenue LLC purchased vacant property in South Tampa for the purpose of dividing the property and constructing twenty-eight residences.  Before purchasing the Manhattan property, Manhattan Avenue hired an engineering firm to conduct environmental testing, which revealed pervasive contamination attributable to Tampa's using an adjacent parcel as a landfill from 1960 until 1991.  Also, without permission from the former owners of the Manhattan property, Tampa allegedly used the Manhattan property as part of the landfill.  Despite actual knowledge of the contamination, Manhattan Avenue purchased the property.  On the day of the purchase, Manhattan Avenue filed against Tampa a notice of claim, which was soon denied.

     Demanding $1.5 million in "nominal damages," $14 million in compensatory damages, and $42 million in punitive damages, Manhattan Avenue sues (Doc. 1)

Tampa and "The Department of Waste Management" for trespass under Florida law (Count I), for inverse condemnation (Count II), and for violating federal and Florida environmental administrative rules (Count III). Tampa moves (Doc. 7) to dismiss the complaint based on lack of standing, expiration of the statutory limitation, and failure to state a claim. Also, Tampa moves to strike the demand for punitive damages and to dismiss "The Department of Waste Management," which lacks "capacity to sue or be sued" under *Lederer v. Orlando Utilities Comm'n.*, 981 So. 2d 521, 525–26 (Fla. 5th DCA 2008). Manhattan Avenue concedes that the demand for punitive damages warrants striking and that "The Department of Waste Management" is not a proper defendant but otherwise opposes the motion to dismiss.

I.    Standing

Tampa argues that Manhattan Avenue lacks standing to sue for trespass under Florida law (Count I) and for inverse condemnation (Count II) because Tampa ceased using the Manhattan property as a landfill in 1991 — more than thirty years before Manhattan Avenue purchased the property in 2022. "To sue and recover for a trespass, the plaintiff must have been the owner or rightfully in possession of the land at the time of the trespass." *Gunning*, 253 So. 3d at 648 (citing *Vincent v. Hines*, 84 So. 614, 616 (Fla. 1920)). Florida taking law applies a similar principle:

> When the government interferes with a person's right to possession and enjoyment of his property to such an extent so as to create a "taking" in the constitutional sense, a right to compensation vests in the person owning the property at the time of such interference. This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right. The theory is that where the government interferes with a

- 2 -

> person's property to such a substantial extent, the owner has
> lost a part of his interest in the real property. Substituted for the
> property loss is the right to compensation. When the original
> owner conveys what remains of the realty, he does not transfer
> the right to compensation for the portion he has lost without a
> separate assignment of such right. If the rule were otherwise,
> the original owner of damaged property would suffer a loss and
> the purchaser of that property would receive a windfall. Pre-
> sumably, the purchaser will pay the seller only for the real prop-
> erty interest that the seller possesses at the time of the sale and
> can transfer.

*Dep't of Transp. v. Burnette*, 384 So. 2d 916, 920 (Fla. 1st DCA 1980) (applying Florida law and quoting *Brooks Inv. Co. v. City of Bloomington*, 232 N.W.2d 911, 918 (Minn. 1975)).  Similarly, under federal law, "Only the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred."  *U.S. Olympic Comm. v. Intelicense Corp., S.A.*, 737 F.2d 263, 268 (2d Cir. 1984).[1]

Manhattan Avenue concedes that Tampa ceased using the Manhattan prop-
erty as a landfill thirty years before Manhattan Avenue purchased the property. (Doc. 1–1; Doc. 9 at 2)  Nonetheless, Manhattan Avenue cites *Jamieson v. Town of Fort Myers Beach*, 292 So. 3d 880 (Fla. 2d DCA 2020), for the proposition that a plain-
tiff can sue under the Bert Harris Act "even though the property was acquired with knowledge of the damage inflicted by a Defendant."  (Doc. 9 at 4)  But the "damage inflicted" by the government in *Jamieson* was the regulatory designation of the

---

[1] Count II, the taking claim, declines to specify whether Florida or federal law governs the claim. Tampa construes Manhattan Avenue to assert the inverse condemnation claim under Florida law. (Doc. 7 at 5–8) The complaint, however, states in paragraph two that the action is brought un-
der 42 U.S.C. § 1983, which permits a plaintiff to assert a Fifth Amendment taking claim against a government acting under color of state law. *See Knick v. Township. of Scott, PA*, 139 S.Ct. 2162, 2177 (2019). This order construes Count II to assert a Fifth Amendment taking claim under Section 1983. But the same result obtains under either Florida or federal law.

purchased property as wetlands.  By purchasing the property subject to the wetlands designation, the plaintiff in *Jamieson* "acquired the full property rights when he bought the property, including the right to challenge the existing wetlands designation." *Jamieson*, 292 So. 3d at 887.  *Jamieson* presents a regulatory taking that a purchaser retains the ability to challenge, but this action presents an inverse condemnation resulting from a completed physical invasion.  No regulation exists for Manhattan Avenue to challenge.  The taking is a physical invasion and, as Manhattan Avenue acknowledges, "the damage [is] done."[2]

Second, Manhattan Avenue appends to the response an "assignment of interest" by which the seller of the Manhattan property "transfer[s] and assigns" to Manhattan Avenue all "right, title, interest and claims to all chose in actions [sic] against [Tampa], in connection with" the Manhattan property.  Although a claim for trespass or inverse condemnation is assignable, nothing in the complaint or the appended "assignment of interest" suggests that the seller had the right to assert a trespass or inverse condemnation claim against Tampa or that the seller owned the Manhattan property before Tampa ceased operating the landfill.  Because Manhattan Avenue alleges no possessory interest, direct or derivative, at the time of the alleged

---

[2] In any event, the complaint includes no claim for compensation under the Bert Harris Act.

- 4 -

invasion of the Manhattan property, Manhattan Avenue fails to plausibly allege standing to sue for trespass or inverse condemnation.

II.   <u>Statutory limitation</u>

Tampa argues that even if Manhattan Avenue has standing to sue for a trespass or inverse condemnation that ceased more than thirty years before Manhattan Avenue's purchase and even if the "assignment of interest" transferred to Manhattan Avenue a valid claim against Tampa, the statutory limitation bars each claim.

Trespass to real property is subject to a four-year limitation under Section 95.11(3), Florida Statutes.  Although a "continuing tort" can extend the limitation for trespass, a continuing tort "is 'established by continued tortious acts, not by continual harmful effects from an original, completed act.'"  *Suarez v. City of Tampa*, 987 So.2d 681, 686 (Fla. 2d DCA 2008) (quoting *Horvath v. Delida, 213 Mich.App.* 620, 540 N.W.2d 760, 763 (1995)).  As Manhattan Avenue acknowledges, Tampa ceased operating the landfill more than thirty years ago.  Manhattan Avenue identifies no other tortious act within the last four years and disclaims a "continuing tort" as a basis for the timeliness of the claim.  (Doc. 9 at 4)

Like trespass, inverse condemnation under Florida law is subject to a four-year limitation.  *Sarasota Welfare Home, Inc. v. City of Sarasota*, 666 So. 2d 171, 172 (Fla. 2d DCA 1995).  Similarly, inverse condemnation under federal law (as applicable under Section 1983) is subject to Florida's four-year residual limitation.  *Owens v. Okure*, 488 U.S. 235, 250 (1989) (holding that a forum state's residual limitation applies to a claim under Section 1983); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

However, a claim for inverse condemnation resulting from physical invasion of property accrues only after "stabilization," that is, after the property was "clearly and permanently taken." *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2000). "[T]he touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable." *Boling*, 220 F.3d at 1373. As Manhattan Avenue acknowledges, Tampa ceased operating the landfill more than thirty years ago, and Manhattan Avenue alleges no facts plausibly suggesting that by 2022 "the permanent nature of the taking" remained elusive. In fact, Manhattan Avenue's engineering firm informed Manhattan Avenue before purchase that the Manhattan property was severely contaminated.

Even if Manhattan Avenue has standing to sue for trespass and inverse condemnation and even if the "assignment of interest" transferred a valid claim, Manhattan Avenue alleges facts establishing that the four-year statutory limitation bars Manhattan Avenue's claims. *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (holding that a defendant may raise a limitation defense in a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitation period has run.")

III.    Failure to state a claim

In Count III, Manhattan Avenue alleges that Tampa "fail[ed] to properly close down the landfill and fail[ed] to use protocols of safety." (¶¶ 31–34) Count III purports to impose liability against Tampa under "Florida and Federal law and Rules of

- 6 -

the Department of Environmental Protection" and refers the reader of the complaint to Composite Exhibit A, Manhattan Avenue's notice of claim to Tampa, which lists "various mandates by the DEP/EPA[] with which [Tampa] failed to comply."[3]

Rule 8, Federal Rules of Civil Procedure, requires a claim to present "a short and plain statement of the claim showing that the pleader is entitled to relief." By directing the reader to forage among sundry attachments to discern under which of the "various mandates by the DEP/EPA" Manhattan Avenue purports to assert a private right of action, the complaint fails to present a "short and plain statement" of entitlement to relief and thus warrants dismissal.

## CONCLUSION

The motion (Doc. 7) to dismiss is **GRANTED**, "The Department of Waste Management" is **DISMISSED** as an improper party, the claim for punitive damages is **STRICKEN**, and the complaint (Doc. 1) is **DISMISSED** for failure to state a claim. Not later than **MAY 26, 2023**, Manhattan Avenue may amend the complaint. In an amended complaint, each count must identify whether the count asserts a claim under federal or Florida law. Further, to the extent an amended complaint relies on an "assignment of interest" to demonstrate standing to sue, the amended

---

[3] The notice of claim cites the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §1906; Resource Conservation and Recovery Act, 42 U.S. Code §6972 (a)(1)(A); and the False Claims Act, 31 U.S.C. § 3729.

complaint must allege facts plausibly demonstrating that the assignor possessed standing to assert a timely claim.

ORDERED in Tampa, Florida, on May 5, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE